McKinney, J.,
delivered the opinion of ne Court.
This was an action of debt brought to recover $125, 00, the amount of Gammon’s subscription for five shares in the stock of said Company. Plea nil debet. Judgment for the defendant, and an appeal in error to this Court.
The ground of defense is, that at the time defendant subscribed for the stock, and previous thereto, it was represented by an agent of the company, in a public address, and the assurance was repeated, privately, to the defendant, that all the stockholders in said com *569 pany should have a direct vote in the location of the road; and' that the defendant made the subscription on that express condition, and refused to subscribe until this assurance vas positively -given, inasmuch as different routes had been proposed, and the location of the road had become a subject of considerable interest and feeling in the community.
The subscription paper, signed by the defendant and many other persons, was as follows, viz.: “ We, the undersigned, bind ourselves to the commissioners named in the fourth section of an act passed by the General Assembly of the State of Tennessee, on the 27th of January, 1848, entitled an act to incorporate the East Tennessee and Virginia Railroad Company, the several sums annexed to our several names for shares in said road; and bind ourselves to pay the instalments and calls thereon according to the provisions of said above-mentioned act. This 19th March, 1849.”
Afterwards, at a general convention of the stockholders of said company, in July, 1850, it was resolved by a nearly unanimous vote — pursuant to an .amendment of the charter, made by the General Assembly on the 8th of Eebruary, 1850 — that the location of the road should be made by the President and Directors of the Company, on the route which should be selected by the engineer of the company, as the best route.
This, it is alleged, on behalf of the defendant, was a violation of the condition of his subscription, and a fraud upon him, which discharged him from his contract.
The proof clearly establishes, that the defendant did in fact subscribe for the stock on the condition before *570 stated; but this rested in parole. And it is clearly established, that the agents of the company in making the representations and assurances before mentioned, acted in perfect good faith. They honestly believed— and such, indeed, seems to have been the first determination of the Board of Directors — that the road would be located by a direct vote of the stockholders. But this determination was subsequently changed, as before stated.
The idea of fraud, or- unfairness in procuring the defendant’s subscription, on the part of the agents of the company, or the Board of Directors, is wholly repelled by the proof in the record.
On this state of facts, we are of opinion that the judgment is erroneous upon two grounds.
First: The subscription for shares in the stock of the company, was a contract; and the interest thereby acquired was. a sufficient consideration to enable the company to support an action against the subscriber for the am'ount subscribed. Angelí and Ames on Corporations, ch. 15, sec. 517. By his subscription for a certain number of shares, at a certain sum, he became liable for the amount of his subscription, on the same principle that the maker of a promissory note renders himself liable. Ibid, sec. 518. The consideration to sustain such a promise, is raised by inference of law from the subscription itself, and the privileges thereby conferred; and from the same circumstance, the law will infer a duty to pay for the stock, and an implied obligation of equal force with an express contract; where nothing appears repugnant to such a construction. By the subscription, the party binds himself to take the *571 shares, and to pay for them, on the terms and conditions expressed in the subscription paper. Ibid, 519.
The subscription being equivalent to a promissory note, it is clear that parole evidence of previous or contemporaneous negotiations, stipulations, or terms, not incorporated in the subscription paper, could not be admitted to vary or contradict the terms of the -written instrument. 4 Sneed, 518, 545. Consequently, the evidence introduced by the defendant to show the condition, on which he subscribed, was altogether inadmissible.
Secondly: The judgment is erroneous, on another ground. Admitting, as the fact appears to be, that by a resolution of the company, or board of directors, it was. at first determined to fix the location of the road by a direct vote of the stockholders; and that in the expectation, and upon the assurance that this mode of locating the road would be carried out, persons were induced to subscribe for stock,' who would not otherwise have done so; still, it was competent to a majority of the stockholders, by a subsequent resolution — if the general interest of the company, or of the public, seemed to demand it — to change the mode first determined upon, and adopt a different one. And if this were done from proper motives, and consistently with the terms of the charter, the minority could not be heard to say that they were discharged from liability, on the ground of the supposed violation of the contract by the company. Corporations are subject to the principle that the whole of the members are bound by the acts of the majority, when such acts are conformable to the charter of incorporation. This principle must necessarily be applied to *572 every association, or collective body of men, in all matters winch concern the common interest; for, as is obvious, if entire unanimity were required, it would be impossible for the body to will or act at all. Hence it is held to be an implied stipulation in every such compact, that the will of the majority shall, in all cases within the scope and provisions of the charter, be taken for the will of the whole; and that every one who becomes a member, assents, beforehand, to all measures that shall be sanctioned by a majority. Nor is this to be regarded as any violation of the principle, that no one shall be bound except with his own consent, given either by himself or his representativesbecause the assent of the majority is, of necessity, taken as the assent of all; each one having tacitly agreed to subject his individual will to the will of the body. See An-gelí and Ames, ch. 14, sec. 499.
The by-laws, orders, and resolutions of the body, are always under the control of the majority; and may, from time to time, be repealed, altered, or modified as, in the judgment of the majority, may be deemed expedient. And it forms no legal ground of complaint, that some regulation, or resolution of the company, which existed at the time a particular individual became a member; and upon the faith of the continuance of which he was alone induced to subscribe for stock, was afterwards abrogated, or changed. It was the right of the majority to do so, and likewise a duty, if demanded by the interest of the company. And the doing so, was no fraud, or breach of faith, on the part of the company towards such individual member.
It follows, therefore, that upon the ground assumed *573 in this record, the defendant cannot resist a recovery by the plaintiff in this action. (
The judgment will be reversed, and the case remanded for a new trial.